ROBERT BERGMAN and HARRIET ELLEN BERGMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bergman v. Commissioner
Docket No. 5475-73.
United States Tax Court
T.C. Memo 1976-178; 1976 Tax Ct. Memo LEXIS 224; 35 T.C.M. (CCH) 785; T.C.M. (RIA) 760178; June 8, 1976, Filed Robert Bergman, pro se. Gregory A. Robinson, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' joint Federal income tax and additions to tax under section 6653(a), Internal Revenue Code of 1954, [1] for the taxable year 1969 in amounts of $2,887.66 and $144.38, respectively.The Commissioner also determined the following *225 deficiencies in income tax and additions to tax against petitioners for the taxable year 1970: Additions to Tax
Sec. Petitioners
Deficiency
Sec. 6651(a)
6653(a)
Sec. 6654
Robert Bergman
$12,989.26
$3,247.32
$649.46
$415.65
Harriet Ellen Bergman
12,451.06
3,112.77
622.55
398.43 Concessions having been made, the following issues are presented for decision: (1) Whether petitioners are taxable on $56,250 received by Robert Bergman in 1970; (2) Whether a loss resulting from misappropriation of funds is deductible in the taxable year 1969 or 1970; and (3) Whether $1,200 deposited to Harriet Bergman's checking account on February 5, 1970, constitutes taxable income or the proceeds of a loan. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts and the attached exhibits are incorporated by this reference. Petitioners Robert and Harriet Ellen Bergman resided in Los Angles, California, when they filed their petition in this proceeding. Petitioners filed a joint Federal income *226 tax return for the taxable year 1969, but neither of them filed a Federal income tax return for the taxable year 1970. Harriet Bergman is a party solely by reason of joining in the filing of a joint return for the taxable year 1969 and by reason of the operation of California community property law for the year 1970. Therefore, the term petitioner will hereinafter refer to Robert Bergman. During the years 1969 and 1970, petitioner engaged in business as a mortgage or loan broker in Los Angeles, California. Sometime in 1970, Mr. Clarence Ray discussed with petitioner the possibility of obtaining a real estate loan in the amount of $750,000. Petitioner subsequently arranged for Mr. Ray to obtain a loan from a Mr. Michael Marsh in the amount of $750,000 bearing interest at 6 percent and payable in three years. In addition, under the terms of the agreement, $56,250 was payable immediately as "additional interest." In order to pay the "additional interest," Mr. Ray obtained a loan from the Community Bank of Huntington Park, California. On September 15, 1970, the bank issued a cashier's check in the amount of $56,250 to Mr. Ray which was immediately cashed by Mr. Ray and the proceeds *227 given to petitioner. Petitioner then took the $56,250 in cash to Mr. Marsh at his home. While petitioner was at Mr. Marsh's home, Mr. Marsh advanced petitioner $10,000 for expenses which he would incur on a trip to Zurich, Switzerland, to be made in connection with the loan transaction. Problems arose and the loan transaction was never consummated. The $56,250 of "additional interest" was never returned to petitioner or Mr. Ray. Within three months, petitioner returned to Mr. Marsh the $10,000 which he had advanced to him. In 1969, petitioner transferred $25,000 to Mr. Joseph L. Gruber which was to be invested in a brewery operation. After transferring the money to Mr. Gruber, it became difficult for petitioner to contact him concerning the investment. Soon thereafter, Mr. Gruber disappeared. Efforts to contact him and to recover the money were futile. After learning of Mr. Gruber's dubious reputation as a result of conversations in 1969 with the district attorney and an agent of the Federal Bureau of Investigation, petitioner became convinced that the chances of recovering the funds were remote and, consequently, claimed a "loss through misappropriation" in the amount of *228 $25,000 on his 1969 Federal income tax return. The Commissioner, in his statutory notice of deficiency for the taxable year 1969, disallowed the $25,000 misappropriation loss claimed by petitioner for lack of substantiation. In his statutory notice of deficiency for the year 1970, the Commissioner determined that the $56,250 in cash which petitioner received from Mr. Ray was taxable as a finder's fee. In addition, the Commissioner determined that certain deposits to Harriet Bergman's checking account constituted taxable income.
OPINION The first issue for decision is whether petitioner, a loan broker, is taxable on $56,250 in cash received from Mr. Clarence Ray on September 15, 1970. Petitioner maintained at trial that in receiving the funds he was acting only as an agent; that he delivered the cash to Mr. Marsh, the proposed lender, as "additional interest;" and that the money was not returned to Mr. Ray or himself after the proposed loan transaction failed to materialize. Respondent contends that the $56,250 was never transferred to Mr. Marsh, but was retained by petitioner as a finder's fee. As indicated in our findings of fact, we are convinced that petitioner's testimony *229 regarding the disposition of the funds is credible and, therefore, he is not taxable on the receipt of the $56,250. Next we must decide whether the loss resulting from the payment of $25,000 to Mr. Joseph L. Gruber is deductible in the taxable year 1969 or 1970. Sometime in early 1969, shortly after the transfer of funds occurred, Mr. Gruber disappeared. All efforts to contact him and to recover the money proved futile. Mr. Gruber's disappearance and discussions with the district attorney and an agent of the Federal Bureau of Investigation regarding Gruber's character and previous activities convinced petitioner prior to the summer of 1969 that the chances of recovering the money were remote. Respondent concedes that the loss was incurred in a business context and is thus deductible in full from ordinary income.However, respondent argues that the loss is deductible in 1970 rather than in 1969 because petitioner attempted to collect the money through Mr. Marsh in 1970. Regardless of whether the loss is properly characterized as a business bad debt deductible under section 166(a)(1) [2] in the year of worthlessness as indicated by respondent at trial or as a theft loss deductible *230 under section 165(e) [3] in the year of discovery, we are satisfied that there existed no reasonable prospect of recovery after the year 1969. Denver & Rio Grande Western Railroad Co. v. Commissioner,279 F.2d 368 (10th Cir. 1960), affg. 32 T.C. 43 (1959); James A. Messner Co.,57 T.C. 848 (1972); Samuel M. Felton,5 T.C. 256 (1945); sec. 1.165-1 (d)(2)(i), Income Tax Regs. Accordingly, petitioner is entitled to a deduction in the taxable year 1969 for the loss resulting from the payment of the $25,000 to Mr. Gruber. The final issue for decision is whether the $1,200 deposited to Harriet Ellen Bergman's checking account on February 5, 1970, constitutes taxable income or the proceeds of a loan. In his statutory notices of deficiency, the Commissioner included certain bank deposits in petitioner's *231 gross income for the years 1969 and 1970. Respondent subsequently conceded that most of these deposits represented the proceeds of loans; however, no agreement could be reached respecting the deposit of February 5, 1970. After considering petitioner's testimony regarding such deposit, we are satisfied that the funds deposited constituted a portion of the proceeds of a loan of $1,500 made by Sally Morris to petitioner and are thus not includable in petitioner's gross income for the taxable year 1970. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Sec. 166(a)(1) WHOLLY WORTHLESS DEBTS. --There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
3. Sec. 165(e) THEFT LOSSES. --For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.↩